A03A1597. TRIPP et al. v. ALLSTATE INSURANCE COMPANY.
(584 SE2d 692)

ELLINGTON, Judge.

Roger and Judith Tripp appeal from an order of the Paulding County Superior Court granting summary judgment to Allstate Insurance Company in this declaratory judgment action. The supe-

---

[11] *Bates & Assoc. v. Romei*, 207 Ga. App. 81, 85 (5) (426 SE2d 919) (1993).
[12] 250 Ga. at 682.

rior court found that an Allstate homeowners policy issued to Steve and Margaret Jones specifically excluded coverage for bodily injury to Jonathan Tripp, who was shot and killed by Josh Tomlinson, the Joneses' son, during an aggravated assault at a pizza restaurant. Finding no error, we affirm.

In four related enumerations of error, the Tripps contend the trial court erred in granting summary judgment because material issues of fact remain as to whether the homeowners policy covers their son's death. Summary judgment is appropriate under OCGA § 9-11-56 "when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citation and punctuation omitted.) *Sorema North American Reinsurance Co. v. Johnson*, 258 Ga. App. 304 (574 SE2d 377) (2002). We apply a de novo standard of appellate review and "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) Id. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Viewed in this light, the record reveals the following facts.

On June 12, 1996, Tomlinson and his friends Jeremy Prater, Erik Thomas and Josh Gann discussed robbing a Little Caesar's Pizza restaurant. According to Tomlinson, however, they went to the restaurant because Gann wanted to buy some marijuana from the restaurant manager. According to Tomlinson, his friends were "ripped" on drugs; Gann alone had ingested 20 hits of LSD. Tomlinson drove the group to the restaurant in his mother's car. When they arrived, Tomlinson and Prater got out of the car and walked to the back of the restaurant. Thomas and Gann stayed in the car. Tomlinson admitted he intended to buy marijuana and that he was holding a pistol-grip 12-gauge shotgun in his hand when he walked to the restaurant's back door. Tomlinson knocked on the door, Jonathan Tripp opened it, and the shotgun discharged, killing Tripp. Tomlinson does not deny holding the weapon; however, he claims he did not know the gun was loaded, that it discharged accidentally, and that he lacked the subjective intent to harm anyone. Yet Tomlinson admitted taking the gun away from his intoxicated friends because he was very worried they might accidentally shoot him or each other. Further, he admitted that when the shotgun discharged, it recoiled and struck his face, giving rise to a strong inference that he was aiming it. After the shooting, Tomlinson fled to Florida.

The shooting occurred during the term of an Allstate homeowners policy of insurance issued to Tomlinson's parents, Steve and Margaret Jones. The policy's Family Liability and Guest Medical Protec-

tion coverage was modified by an endorsement containing this exclusion:

> We do not cover any bodily injury or property damage intended by or which may reasonably be expected to result from the intentional act or acts or omissions of any insured person which are crimes pursuant to the Georgia Criminal Code. However, this exclusion shall not apply if such act or omission was for the preservation of life or property. This exclusion applies even if (a) such insured person lacks the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law; (b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or (c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected. This exclusion applies regardless of whether or not such insured person is actually charged with or convicted of a crime.

Based upon this exclusion and the evidence adduced,[1] the trial court determined the policy did not cover Jonathan Tripp's death, even if Tomlinson lacked a subjective intent to harm him. The court concluded the shooting death was a bodily injury which may reasonably be expected to result from Tomlinson's criminal acts:

> One who, in the dark of night, with his colleagues of like persuasion, having embarked on a criminal venture, either to rob — as his companions claim or to close a drug deal — as he claims, all hoping for a successful result, and who holds a shotgun in his arms for intimidation or a perceived personal need for protection — loaded or unloaded — must anticipate that some bodily injury is likely to result to somebody.

For the following reasons, we agree.

---

[1] The Tripps contend the trial court erred in considering evidence of Tomlinson's aggravated assault conviction. See *Prater v. State*, 273 Ga. 477 (545 SE2d 864) (2001). The Supreme Court of Georgia has held that "a judgment of conviction or acquittal rendered in a criminal prosecution cannot be given in evidence in a purely civil action, to establish the truth of the facts on which it was rendered." (Citations and punctuation omitted.) *Pierce v. Pierce*, 241 Ga. 96, 100 (3) (243 SE2d 46) (1978). We see nothing in the Tripps' brief, in the record, or in the summary judgment order, however, suggesting that the court relied on Tomlinson's conviction to establish the material facts upon which summary judgment was founded. The relevant facts may be found in Tomlinson's own deposition testimony. Consequently, the Tripps have failed to carry their burden on appeal, and we find this enumeration to be without merit. See *Ferros v. Ga. State Patrol*, 211 Ga. App. 50, 51-52 (2) (438 SE2d 163) (1993).

Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as those terms are not contrary to law, and it is equally free to insure against certain risks while excluding others. *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 269 Ga. 691, 692-693 (505 SE2d ·729) (1998). "As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." (Footnote omitted.) Id. at 693.

A number of courts reviewing the same or a substantially similar exclusion have found it to be clear and unambiguous. See, e.g., *Allstate Ins. Co. v. Burrough*, 120 F3d 834, 840 (II) (B) (8th Cir. 1997) (same exclusion); *Allstate Ins. Co. v. Brown*, 16 F3d 222, 226 (II) (7th Cir. 1994) (similar exclusion); *Allstate Ins. Co. v. Myers*, 951 FSupp. 1014 (M.D. Fla. 1996) (similar exclusion); *Allstate Ins. Co. v. McCarn*, 2002 Mich. App. LEXIS 1778 (2002) (same exclusion); *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179, 180-181 (1) (441 SE2d 453) (1994) ("We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.") (punctuation and emphasis omitted); *Allstate Ins. Co. v. Simansky*, 45 Conn. Supp. 623 (738 A2d 231) (1998) (similar exclusion). Because we find the exclusion at issue to be clear and unambiguous, it requires no construction.

The exclusion relieves the insurer of liability if (1) the insured acted *either* intentionally *or* criminally, and (2) the resulting injuries were *either* intended *or* may reasonably be expected to result from the insured's intentional or criminal acts. See *Allstate Ins. Co. v. Myers*, 951 FSupp. at 1018; *Allstate Ins. Co. v. McCarn*, 2002 Mich. App. LEXIS 1778-1779. In this case, Tomlinson's actions were criminal. The court found that Tomlinson "pointed a shotgun which discharged directly at the deceased," given that the "trajectory of the shot follow[ed] a straight line from barrel to body with no one else in the group being injured. (Aggravated Assault)." This is a crime as defined in OCGA § 16-5-21 (a) (2). *Rhodes v. State*, 257 Ga. 368, 370 (5) (359 SE2d 670) (1987). The court also found that Tomlinson was admittedly on "a mission to buy marijuana," a violation of OCGA § 16-13-30 (a). Even Tomlinson conceded in his deposition that because of his acts on June 12, 1994, he was "a criminal now[,] obviously." No material issue of fact remains for jury resolution on this point. See *Allstate Ins. Co. v. Burrough*, 120 F3d at 839-840 (II) (A).

The trial court also properly determined that a reasonable person would find that Tripp's bodily injuries and resulting death were the natural, probable, and foreseeable consequences of Tomlinson's actions as a matter of law. See *Allstate Ins. Co. v. Burrough*, 120 F3d

at 840-841 (III); *Allstate Ins. Co. v. McCarn*, 2002 Mich. App. LEXIS 1778-1779. Injury "which may reasonably be expected to result" is not measured by the subjective intent of the insured but by what an objective, reasonable person would expect. See *Stinson v. Allstate Ins. Co.*, 212 Ga. App. at 181 (1) (a similar exclusion created "a universal objective standard . . . the 'reasonable person,' acting in the same or similar circumstances as [Tomlinson], a completely familiar objective standard in tort law"); see also *Allstate Ins. Co. v. Brown*, 16 F3d at 225 (II) ("The insured's subjective intent, expectation or belief is not material because it is not an element of the exclusion."). While the condition "intended by" requires the subjective or conscious desire of the insured to inflict harm, the condition "or which may reasonably be expected" does not. "To so require a subjective intent for this condition would render this clause 'wholly redundant.'" (Citation omitted.) *Allstate Ins. Co. v. Simansky*, 45 Conn. Supp. at 625.

Given the evidence adduced, the trial court was authorized to find, as a matter of law, that a reasonable person in Tomlinson's circumstances may expect bodily injury to result from his criminal actions. See *Allstate Ins. Co. v. Burrough*, 120 F3d at 841. Tomlinson and his dangerously intoxicated friends went to a closed restaurant, late at night, armed with a shotgun, motivated by an interest to get drugs from a person who might foreseeably react with fear or violence. A reasonable person would expect that someone may get hurt in such perilous circumstances. Tomlinson, in fact, feared he might get shot by his own friends. This is not the type of risk the insurer intended its homeowners policy to cover and, consequently, specifically contracted to exclude. The trial court properly found the exclusion applied and properly granted summary judgment in favor of Allstate.

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED JULY 1, 2003.

*Adkins & Whitfield, Russell L. Adkins, Jr., James R. Whitfield,* for appellants.

*Carlock, Copeland, Semler & Stair, Frederick M. Valz III, A. Paul Moore, Jr.,* for appellee.